Peter J. Bezek (SBN 102310)
Roger N. Behle, Jr., Esq. (SBN 174755)
**FOLEY BEZEK BEHLE & CURTIS, LLP**
575 Anton Blvd., Suite 710
Costa Mesa, CA  92626
Telephone (714) 556-1700
Facsimile: (714) 546-5005
pbezek@foleybezek.com; rbehle@foleybezek.com

Attorneys for Defendants

### UNITED STATES DISTRICT COURT

### SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANTICANCER, INC., a California Corporation. | ) CASE NO.: 07CV2294-L(BLM) |
| Plaintiff, | ) Judge:  M. James Lorenz<br>) Magistrate:  Barbara L. Major |
| vs. | ) |
| TECO DIAGNOSTICS,  a California Corporation; KC CHEN, a natural person; TONG CHIAH, a natural person; JIAN YANG VAECHES, a natural person; and  DOES 1 through 30, Inclusive, | ) **EXHIBITS TO DECLARATION OF**<br>) **ROGER N. BEHLE, JR., IN SUPPORT OF**<br>) **DEFENDANTS' OPPOSITION TO**<br>) **PLAINTIFF'S MOTION FOR PARTIAL**<br>) **SUMMARY JUDGMENT** |
| Defendants. | ) |

### TABLE OF CONTENTS

EXHIBIT A...................................................................................................................1

EXHIBIT B...................................................................................................................8

EXHIBIT C.................................................................................................................10

Dated:  July 11, 2008          FOLEY BEZEK BEHLE & CURTIS, LLP

_s/Roger N. Behle, Jr._____
Roger N. Behle, Jr.
Attorneys for Defendants.

i

EXHIBIT "A"-1

THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF CALIFORNIA


ANTICANCER INC., a CALIFORNIA    )
CORPORATION,                     )
                                 )
            Plaintiff,           )
                                 )
       vs.                       )    No. 07-CV-2294-L
                                 )
TECO DIAGNOSTIC, a CALIFORNIA    )
Corporation; KC CHEN, a natural  )
person; TONG CHIAH, a natural    )
person; JIAN YANG VAECHES, a     )
natural person; and DOES 1       )
through 30,                      )
                                 )
            Defendants.          )
                                 )


DEPOSITION OF ROBERT M. HOFFMAN, Ph.D.

San Diego, California

Monday, June 16th, 2008

Volume I


Reported by:
JULEE FOGLEMAN
CSR No. 13118
JOB No. 6221G

A-2

1    that?

2         A    I would say the order of a year, and it was

3    such a big step that we have a scientific publication on

4    that.

5         Q    Where did you publish that?

6         A    Clinical Chemistry.

7         Q    Where there other readers other than the

8    Hitachi 912 that Dr. Tan or others within Anticancer

9    were attempting to apply the homocysteine assay kit

10   to?

11        A    Not in Anticancer.   That's the only automated

12   reader we have.

13        Q    And later I believe you said approximately a

14   year and a half to two and a half years ago you began

15   purchasing from Opulen the manual readers?

16        A    That's correct.

17        Q    So prior to entering into the agreement with

18   Opulen to buy the manual readers you were selling your

19   homocysteine assay kits exclusively for application on

20   the Hitachi 912?

21        A    First of all, we don't have any agreement with

22   Opulen other than just a customer.   Yes, Hitachi 912 or

23   an equivalent.

24        Q    What would you consider being an equivalent to

25   the Hitachi 912?

A-3

Anticancer, Inc vs. Teco Diagnostics

Witness:Robert M. Hoffman, Ph.D., Vol. I

Date Taken: 6/16/2008

Page 65

1       A     Perhaps their 917.

2       Q     So Mr. Chiah raised the prospect of applying

3   your homocysteine assay testing kit to Beckman CX,

4   correct?

5       A     Yes.

6       Q     All right.  And based on his comments you were

7   of the view that Mr. Chiah was not a scientist because

8   the length of time that he had outlined in terms of

9   filling orders was not something in your view that could

10  be accomplished, true?

11              MR. LAWTON:  Accumulative.  You may answer

12  again.

13              THE WITNESS:  My opinion had nothing to do with

14  filling orders.  My opinion was what it would take to

15  apply our test to another instrument.  This is a serious

16  undertaking and he said he needed to fill an order in

17  three weeks or some ridiculous thing like this, and I

18  kept telling him this is not possible.

19  BY MR. BEHLE:

20      Q     Okay.

21      A     That we need time to do this and we're willing

22  to take this time under certain conditions but we need

23  significant time and effort.

24      Q     So your view of the proposal was that it

25  certainly couldn't be accomplished within the time frame

A-4

Page 66

1    that Mr. Chiah was suggesting, but were you willing to

2    proceed to determine if the test could be applied to the

3    Beckman CX over a longer period of evaluation?

4        A    I was willing to proceed appropriately.

5        Q    And what did you understand -- at the time you

6    contemplated that, what did you understand that to

7    mean?

8        A    Well, I think it would be over a period of six

9    months to a year.

10       Q    How long did the call with Mr. Chiah last, if

11   you remember, the first call?

12       A    I don't remember.

13       Q    All right.  And where did you leave it with him

14   when he called you?  Did you hang up and say not

15   interested, or did you say we are but here is what we

16   think we need to do.  What was the end result of that

17   first call?

18       A    Well, it's hard to remember all the details,

19   but I think the conclusion of that call was we should

20   have a meeting, sit down together.

21       Q    All right.  And did you invite Mr. Chiah to

22   attend a meeting with you?

23       A    I believe I did.

24       Q    All right.  And did you invite him here to San

25   Diego for purposes of that meeting?

Page 67

1    A    To the best of my recollection.

2    Q    Did he attend a meeting here?

3    A    He and this individual here, Dr. Chen.

4    Q    Dr. Chen.  The first time, that was the first

5    time meeting you had?

6    A    Yes.

7    Q    Did you ever meet with Mr. Chiah before you met

8    with Mr. Chiah and Dr. Chen?

9    A    As I said, I have a vague recollection of him

10    coming to our booth at AACC.

11    Q    All right.  And do you remember when the first

12    meeting with Mr. Chiah and Dr. Chen occurred?

13    A    August or September perhaps of 2006, somewhere

14    in there.

15    Q    All right.  And this was at Anticancer's

16    office, Ostrow Street?

17    A    Yes.

18    Q    Who other than Mr. Chiah and Dr. Chen

19    attended?

20    A    Myself, Li Tang, and Dr. Tan.

21    Q    And how long did that meeting last?

22    A    Again, I have to recollect something almost two

23    years ago.  We have hundreds of meetings.  I would say

24    the order of four hours.

25    Q    And what was the general subject of discussion

A-6

1    during those four hours?

2        A    The one subject was, of course, could our assay

3    be applied to the Beckman instrument and what were the

4    principles of the assay, how did it work.  We

5    demonstrated the assay.  Dr. Tan demonstrated the whole

6    assay to these two individuals, Dr. Chen and Mr. Chiah.

7    Full demonstration.  We talked about how they wanted to

8    sell this assay, our assay in different territories.

9        Q    All right.  Now, the demonstration that was

10    given, was that utilizing the Hitachi 912 or the manual

11    reader or both?

12        A    Could have been both or it might have been just

13    on the Hitachi.  It's hard for me to remember this, but

14    it was definitely a full demonstration of all the steps

15    which are not so dissimilar.  There are more hand steps

16    if you use a reader, but the reagents are basically the

17    same, so it's not -- they are not so demonstratively

18    different.

19        Q    And in terms of the demonstration, how long did

20    that process take during the meeting?

21        A    Well, there is a prestep.  You have to treat

22    the plasma or serum and that usually takes 30 minutes or

23    so or around, and then the rest of the test is less than

24    an hour.  Approximately.

25        Q    Okay.  And then were you present while the

EXHIBIT "B" – 8

Page 59

1    ask Dr. Hoffman can we sign agreement yet yeah he said

2    still negotiating then I tell me some some so I just

3    know.

4        Q    All right so your knowledge was the product

5    exclusive agreement ever signed?

6        A    No Dr. Hoffman said we never sign that's why we

7    hold, he said we didn't sign any agreement except the

8    CDA.

9        Q    Do you know why the product exclusive agreement

10   was never signed?

11       A    We wanted sign they refused to sign they

12   changed they changed so that Dr. Hoffman asked me ask

13   Tong how about a product agreement do you want to sign

14   so I called Tong I said we already revised that right so

15   if you agree we can sign.  Tong said no, hold.  Yeah he

16   told us hold.  He said he didn't eval our assay

17   because we haven't success on the Beckman yet, right.

18   He refused sign, Teco refused to sign the agreement.

19       Q    So you told Mr. Chiah that AntiCancer was

20   prepare to go sign this agreement?

21       A    Yes, sir I called him we sent them after you

22   review if you agreement we can sign they refused to

23   sign.

24       Q    Okay.  I'll mark this as Exhibit 71?

25       A    That's Tong told me on the phone.

B-9

EXHIBIT "C" – 10

1   Peter J. Bezek (SBN 102310)
2   Roger N. Behle, Jr., Esq. (SBN 174755)
    **FOLEY BEZEK BEHLE & CURTIS, LLP**
3   575 Anton Blvd., Suite 710
    Costa Mesa, CA 92626
4   Telephone (714) 556-1700
    Facsimile: (714) 546-5005
5   pbezek@foleybezek.com; rbehle@foleybezek.com
6   Attorneys for Defendants
    TECO DIAGNOSTICS, a California Corporation; KC CHEN, TONG CHIAH,
7   a natural person; TONG CHIAH, a natural person and JIAN YANG VAECHES,
    a natural person
8

9                   IN THE UNITED STATES DISTRICT COURT

10              FOR THE SOUTHERN DISTRICT OF CALIFORNIA

11  ANTICANCER, INC. C., a California        )   CASE NO.: 07CV2294-L(BLM)
12  Corporation                             )
                                            )   Judge: M. James Lorenz,
13              Plaintiff,                  )   Magistrate: Barbara L. Major
        vs.                                 )
14                                          )
                                            )   [PROPOSED] **AMENDED ANSWER TO**
15  TECO DIAGNOSTICS, a California          )   **SECOND AMENDED COMPLAINT;**
    Corporation; KC CHEN, a natural person; )   **DEMAND FOR JURY TRIAL**
16  TONG CHIAH, a natural person;           )
    JIAN YANG VAECHES, a natural person;    )
17  and DOES 1 through 30, Inclusive,       )
                                            )
18              Defendants.                 )
19                                          )
20
21
22

23          **AMENDED ANSWER TO SECOND AMENDED COMPLAINT**
24

25          Defendants, Teco Diagnostics, a California Corporation ("Teco"), KC CHEN
26  ("Chen"), Tong Chiah ("Chiah"), and JIAN YANG VAECHES ("Vaeches") collectively the

Defendants, by and through their attorneys, hereby amend their Answer to the Second

Amended Complaint filed by Plaintiff, ANTICANCER, INC. a California Corporation

---

                                    1

C-11

("Anticancer") and admit, deny and allege as follows:

1.    Defendants deny each and every allegation of the Second Amended Complaint except paragraphs 5, 6, 7, 8, 12, 13, 14, 15 and 16.

2.    Defendants admit the allegations in paragraphs 5, 6, 7, 8, 12, 13, 14 and 15.

3.    For paragraph 16, Defendants deny the allegations to the extent that it implies that negotiations broke down before Teco Diagnostics made the public announcement. Defendants otherwise admit the allegations in this paragraph.

The Defendants assert the following affirmative defenses to the Second Amended Complaint.

## AFFIRMATIVE DEFENSES

### FIRST AFFIRMATIVE DEFENSE

#### (Improper Venue)

1.    This Court is not the proper venue.  This case should have been filed with the Central District.

### SECOND AFFIRMATIVE DEFENSE

#### (Waiver)

2.    AntiCancer's claims are barred by the Doctrine of Waiver.

### THIRD AFFIRMATIVE DEFENSE

#### (Laches)

3.    AntiCancer's claims are barred by the Doctrine of Laches.

### FOURTH AFFIRMATIVE DEFENSE

#### (Abandonment)

4.    The doctrine of abandonment bars AntiCancer's Second Amended Complaint and each and every cause of action contained therein.

### FIFTH AFFIRMATIVE DEFENSE

#### (Statute of Limitations)

5.    Defendants are informed and believe that AntiCancer's Second Amended Complaint and each and every cause of action therein is barred by and/or limited by the

[PROPOSED] AMENDED ANSWER TO SECOND AMENDED COMPLAINT

C-12

1    applicable statute of limitations thereto.

2    ## SIXTH AFFIRMATIVE DEFENSE

3    ### (Fails to State A Cause Of Action)

4    6.    AntiCancer's Second Amended Complaint fails to state any claim upon which

5    relief may be granted.

6    ## SEVENTH AFFIRMATIVE DEFENSE

7    ### (Invalid '191 Patent)

8    7.    The '191 patent and all claims thereof have been, and are, invalid and fail to

9    meet the conditions of patentability specified in Title 35, United States Code, including in

10    particular §§ 101,102,103, and 112 of said title.

11    ## EIGHTH AFFIRMATIVE DEFENSE

12    ### (Invalid '467 Patent)

13    8.    The '467 patent and all claims thereof have been, and are, invalid and fail to

14    meet the conditions of patentability specified in Title 35, United States Code, including in
particular §§ 101,102,103, and 112 of said title.

15    ## NINTH AFFIRMATIVE DEFENSE

16    ### (Invalid '102 Patent)

17    9.    The '102 patent and all claims thereof have been, and are, invalid and fail to

18    meet the conditions of patentability specified in Title 35, United States Code, including in

19    particular §§ 101,102,103, and 112 of said title.

20    ## TENTH AFFIRMATIVE DEFENSE

21    ### (Invalid '446 Patent)

22    10.    The '446 patent and all claims thereof have been, and are, invalid and fail to

23    meet the conditions of patentability specified in Title 35, United States Code, including in

24    particular §§ 101,102,103, and 112 of said title.

25    ## ELEVENTH AFFIRMATIVE DEFENSE

26    ### (Invalid '762 Patent)

11.    The '762 patent and all claims thereof have been, and are, invalid and fail to

meet the conditions of patentability specified in Title 35, United States Code, including in

- 3 -

---

3

C-13

particular §§ 101, 102, 103, and 112 of said title.

## TWELVTH AFFIRMATIVE DEFENSE

### (No Infringement of '191 Patent)

12.    Defendants have not infringed the '191 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '191 patent.

## THIRTEENTH AFFIRMATIVE DEFENSE

### (No Infringement of '467 Patent)

13.    Defendants have not infringed the '467 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '467 patent.

## FOURTEENTH AFFIRMATIVE DEFENSE

### (No Infringement of '102 Patent)

14.    Defendants have not infringed the '102 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '102 patent.

## FIFTEENTH AFFIRMATIVE DEFENSE

### (No Infringement of '446 Patent)

15.    Defendants have not infringed the '446 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '446 patent.

## SIXTEENTH AFFIRMATIVE DEFENSE

### (No Infringement of '762 Patent)

16.    Defendants have not infringed the '762 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '762 patent.

///

///

- 4 -

[PROPOSED] AMENDED ANSWER TO SECOND AMENDED COMPLAINT

C-14

## SEVENTEENTH AFFIRMATIVE DEFENSE

### (Patent Misuse-Total Sales Royalty)

17.    The Defendants are informed and believe, and upon such basis allege that AntiCancer has committed misuse of the '191, '467, '102, '446, '762 patents ("Patents-In-Suit") in that it has conditioned licenses of said patents upon an agreement by licensees to pay royalties based on total sales rather than on actual use. AntiCancer has thus attempted to use its patent leverage to coerce a promise to pay royalties from licensees on items not claimed in the Patents-In-Suit.

## EIGHTEENTH AFFIRMATIVE DEFENSE

### (Patent Misuse-Package Licensing)

18.    The Defendants are informed and believe, and upon such basis allege that AntiCancer has committed misuse of the Patents-In-Suit in that it has conditioned licenses of said patents upon an agreement by licensees to obtain a "package" license on several AntiCancer patents.

## NINETEENTH AFFIRMATIVE DEFENSE

### (No Right To Jury Trial)

19.    AntiCancer has no right to a jury trial in this action.

## TWENTIETH AFFIRMATIVE DEFENSE

### (Disclosure of Prior Art)

20.    The claims of the Patents-In-Suit have been disclosed in the prior art.

## TWENTY-FIRST AFFIRMATIVE DEFENSE

### (Prosecution History Estoppel)

21.    AntiCancer is precluded, under the doctrine of Prosecution History (File Wrapper) Estoppel, from seeking constructions of the claims of the Patents-In-Suit that are inconsistent with the prosecution thereof before the United States Patent and Trademark Office. To that end, AntiCancer cannot resurrect subject matter surrendered during the prosecution of the Patents-In-Suit before the United States Patent and Trademark Office.

5

C-15

## TWENTY-SECOND AFFIRMATIVE DEFENSE

### (Breach and Forfeit by AntiCancer)

22.    The Defendants are informed and believe, and upon such basis allege that AntiCancer has breached its obligations under the contract upon which its claims are based, and by reason of such breaches, has forfeited any right to assert such claims.

## TWENTY-THIRD AFFIRMATIVE DEFENSE

### (Implied License)

23.    AntiCancer created an implied license by its words and conduct which gave Defendants the impression that AntiCancer consented to Defendants' use, sale, marketing, and/or offer of sale its product.

## TWENTY-FOURTH AFFIRMATIVE DEFENSE

### (Estoppel)

24.    AntiCancer's claims are barred by the Doctrine of Estoppel.

## TWENTY-FIFTH AFFIRMATIVE DEFENSE

### (Lack of Standing)

25.    This complaint is barred by the fact that Anticancer lacks standing to bring an action as against the natural person Defendants.  These Defendants are not parties to the transaction.

## PRAYER FOR RELIEF

WHEREFORE, the Defendants respectfully request that this Court:

A.    Enter judgment that Plaintiff, AntiCancer take nothing by reason of its Second Amended Complaint in this matter.

B.    Enter judgment that Defendants have not infringed the '191 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '191 patent.

C.    Enter judgment that Defendants have not infringed the '467 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '467 patent.

6

C-16

D.  Enter judgment that Defendants have not infringed the '102 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '102 patent.

E.  Enter judgment that Defendants have not infringed the '446 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '446 patent.

F.  Enter judgment that Defendants have not infringed the '762 patent and the marketing, manufacture, sale, and/or distribution of medical tests and devices, via their website or other means, will not infringe the '762 patent.

G.  Enter judgment that the '191 patent is invalid.

H.  Enter judgment that the '467 patent is invalid.

I.  Enter judgment that the '102 patent is invalid.

J.  Enter judgment that the '446 patent is invalid.

K.  Enter judgment that the '762 patent is invalid.

L.  Enter an order dismissing the Second Amended Complaint of AntiCancer, with prejudice, and denying AntiCancer's relief requested in the Second Amended Complaint and any relief whatsoever.

M.  Award Defendants reasonable attorney's fees and costs.

N.  For such other relief and the Court deems just and proper.

Dated: May 20, 2008                    FOLEY BEZEK BEHLE & CURTIS, LLP


                                       s/Roger N. Behle, Jr.
                                       Roger N. Behle, Jr.
                                       Attorneys for Defendants.

[PROPOSED] AMENDED ANSWER TO SECOND AMENDED COMPLAINT

C-17

# DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b), Defendants hereby demand a jury trial in this matter.

Dated:  May 20, 2008                          FOLEY BEZEK BEHLE & CURTIS, LLP


                                              s/Roger N. Behle, Jr.
                                              Roger N. Behle, Jr.
                                              Attorneys for Defendants.

- 8 -

[PROPOSED]  AMENDED  ANSWER  TO  SECOND  AMENDED  COMPLAINT

C-18

## CERTIFICATE OF SERVICE

### STATE OF CALIFORNIA, COUNTY OF ORANGE:

The undersigned hereby certifies that all counsel of record in the *Anticancer, Inc. v. Teco Diagnostics,* Case No. 07CV2294L (BLM), who are deemed to have consented to electronic service, are being served this 11th ay of July, 2008, with a copy of this document: **EXHIBITS TO DECLARATION OF ROGER N. BEHLE, JR., IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARYJUDGMENT** via the Court's CM/ECF as follows:

Dan Lawton, Esq.
LAWTON LAW FIRM
402 West Broadway, Suite 1860
San Diego, CA 92101
619-595-1520 Facsimile

    ☐    **BY HAND DELIVERY**: I personally delivered a true copy of the above-referenced document(s) to the person(s) listed above.

    ☐    **BY OVERNIGHT DELIVERY**: I am familiar with the practice at my place of business for collection and processing of documents for overnight delivery with an overnight courier service. The above-referenced document(s) will be placed in an envelope, addressed to the person(s) listed above, sealed, and placed for collection and delivery the next business day with fees fully prepaid in accordance with ordinary business practices.

    ☐    **BY FACSIMILE**: I caused the above-referenced document(s) to be served on the person(s) listed above by facsimile and from Foley Bezek Behle & Curtis, LLP's facsimile machine no. (714) 546-5005.

    ☐    **BY E-MAIL**: I submitted an electronic version of the above-referenced document(s) to the person(s) whose e-mail address(es) is/are known to me as listed above.

    ☒    **BY MAIL**: I am familiar with the practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. The above-referenced document(s) will placed in an envelope, addressed to the person(s) listed

above, sealed, and deposited with the United States Postal Service with postage fully prepaid in accordance with the ordinary course of business.

■ **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

□ **(STATE)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I certify that all parties in this case that have made an appearance are represented by counsel who are CM/ECF participants who have consented to electronic service.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Dated: July 11, 2008           FOLEY BEZEK BEHLE & CURTIS, LLP

                               *s/Roger N. Behle, Jr.*
                               Roger N. Behle, Jr.
                               Attorneys for Defendants.