Peter J. Bezek (SBN 102310)
Roger N. Behle, Jr., Esq. (SBN 174755)
**FOLEY BEZEK BEHLE & CURTIS, LLP**
575 Anton Blvd., Suite 710
Costa Mesa, CA 92626
Telephone (714) 556-1700
Facsimile: (714) 546-5005
pbezek@foleybezek.com; rbehle@foleybezek.com

Attorneys for Defendants

**UNITED STATES DISTRICT COURT**

**SOUTHERN DISTRICT OF CALIFORNIA**

ANTICANCER, INC., a California Corporation.

Plaintiff,

vs.

TECO DIAGNOSTICS, a California Corporation; KC CHEN, a natural person; TONG CHIAH, a natural person; JIAN YANG VAECHES, a natural person; and DOES 1 through 30, Inclusive,

Defendants.

**CASE NO.: 07CV2294-L(BLM)**

Judge: M. James Lorenz
Magistrate: Barbara L. Major

**DECLARATION OF TONG CHIAH IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDMGENT**

DATE: July 21, 2008
TIME: 10:30 a.m.
COURTROOM: 14

I, Tong Chiah, declare as follows:

1. I have personal knowledge of the facts contained in this Declaration and if called to testify I could and would competently testify thereto.

2. I have been employed by Teco Diagnostics ("Teco") for over four years. I am currently employed as the project manager for Teco at its principal place of business in Anaheim, California.

3. Teco Diagnostics, ("Teco") is a worldwide manufacturer of medical tests and devices. Teco distributes its products in over 90 countries, including the United States. In August 2006, I approached AntiCancer, Inc. ("Plaintiff") to discuss a possible joint venture

between our companies. Specifically, I contacted Plaintiff on behalf of Teco to discuss Plaintiff's Homocysteine Assay kit ("the Kit"). Teco had already been selling another Homocysteine Assay test, manufactured by Catch, Inc., and was interested in adding another such test to its line.

4. Homocysteine assay tests are "read" on machines called analyzers or "readers." There are many different types and brands of readers on the market. In selecting a particular homocysteine assay test for purchase, a customer must be certain to purchase only tests that can be applied to the particular reader they have in their office or lab. Not all homocysteine tests can be applied to all readers. I am informed and believe that the Homocysteine Assay test sold to Teco by Catch, Inc., is covered by multiple U.S. Patents, separate from those of Plaintiff. I was so informed by Catch, Inc.

5. A preliminary issue for Teco was whether Plaintiff's Kit could be applied to a reader manufactured by Beckman Coulter - the Beckman CX ("CX Reader"). The CX Reader was an automated reader, which meant that it could perform tests in less time than through the use of a manual reader. As a large number of Teco's customers used the CX Reader, Teco needed to know whether the Kit could be applied to that reader. If it could, Plaintiff and Teco stood to benefit from the sale of Plaintiff's Kit to Teco's customers.

6. Thus, our initial discussions centered on a determination as to whether the Kit could be applied to the CX Reader. By all accounts, this process could take up to a year to complete. Therefore, representatives from Plaintiff traveled to Teco's facilities in Anaheim, California to conduct preliminary testing alongside Teco representatives.

7. In August of 2006, the parties also began exchanging drafts of various agreements. Among these was a Product Exclusive Agreement ("PEA"). The PEA was intended to define the basic terms relating to Teco's purchase of product from Plaintiff for distribution in the United States. Under Paragraph 1 of the PEA, for example, Teco was to be granted the exclusive right to promote and sell Plaintiff's Kit under the "Teco Diagnostics" brand.

8. The initial draft of the PEA was prepared by Teco. Plaintiff later provided Teco with its proposed revisions to the PEA. Notably, Plaintiff did not remove or revise the branding provision. Li Tang of AntiCancer, Inc. told me Plaintiff was prepared to sign the revised draft of the PEA and was merely waiting for Teco to do so. However, because the parties were continuing to assess the application of Plaintiff's Kit to the CX Reader while these drafts were exchanged, the PEA was not executed. True and correct copies of both drafts of the PEA are attached hereto as Exhibit "A".

9. During August and September of 2006, the parties also exchanged drafts of a Confidential Disclosure Agreement ("CDA"). As I understood it, the CDA was intended to provide a framework for the treatment of confidential information exchanged between the parties. The CDA was ultimately executed effective September 18, 2006. A true and correct copy of the executed CDA is attached hereto as Exhibit "B." The purpose of the CDA, as I understood it, was to allow the parties to evaluate "the suitability of entering into a business relationship."

10. To evaluate the international market for these products, Teco prepared a one-page informational flyer (the "Flyer"), which it brought to the MEDICA show in Germany. The Flyer depicted "mock-ups" of both the Kit and the Opulen Reader. However, no *pricing* or *sales information* was included on the Flyer. The Flyer was merely informational. A true and correct copy of the Flyer is attached hereto as Exhibit "C."

11. Also, consistent with paragraph 1 of the PEA, the product mock-ups were branded under the Teco Diagnostics brand. The reverse side of the Flyer contained basic information, relating to procedures and specifications for the Kit. This information was provided to Teco by Plaintiff and, to my understanding, was part of the publicly-distributed package insert provided by Plaintiff to purchasers of the Kit.

12. To further evaluate the potential market for Plaintiff's Kit, Teco also prepared a short informational statement for inclusion on its website. Like the Flyer, the website statement did not contain pricing or sales information. Rather, the website only provided general information about the Kit, including the fact that it was covered by several U.S. patents and

had received 510(k) clearance. There was absolutely no response to the website posting. A true and correct copy of the website posting is attached hereto as Exhibit "D."

13. I know that Teco never made any Kits itself, never used any Kits, never sold any Kits, never offered to sell any Kits, and never received any orders for Kits. In short, I have knowledge that Teco has received no money or business relating to the Kits.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the foregoing is true and correct.

Executed this 3rd day of July, 2008 at Costa Mesa, California.

TONG CHIAH

**CERTIFICATE OF SERVICE**

**STATE OF CALIFORNIA, COUNTY OF ORANGE:**

The undersigned hereby certifies that all counsel of record in the *Anticancer, Inc. v. Teco Diagnostics,* Case No. 07CV2294L (BLM), who are deemed to have consented to electronic service, are being served this 11th ay of July, 2008, with a copy of this document: **DECLARATION OF TONG CHIAH IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT** via the Court's CM/ECF as follows:

Dan Lawton, Esq.
LAWTON LAW FIRM
402 West Broadway, Suite 1860
San Diego, CA 92101
619-595-1520 Facsimile

☐ **BY HAND DELIVERY**: I personally delivered a true copy of the above-referenced document(s) to the person(s) listed above.

☐ **BY OVERNIGHT DELIVERY**: I am familiar with the practice at my place of business for collection and processing of documents for overnight delivery with an overnight courier service. The above-referenced document(s) will be placed in an envelope, addressed to the person(s) listed above, sealed, and placed for collection and delivery the next business day with fees fully prepaid in accordance with ordinary business practices.

☐ **BY FACSIMILE**: I caused the above-referenced document(s) to be served on the person(s) listed above by facsimile and from Foley Bezek Behle & Curtis, LLP's facsimile machine no. (714) 546-5005.

☐ **BY E-MAIL**: I submitted an electronic version of the above-referenced document(s) to the person(s) whose e-mail address(es) is/are known to me as listed above.

☒ **BY MAIL**: I am familiar with the practice at my place of business for collection and processing of correspondence for mailing with the United States Postal Service. The above-referenced document(s) will placed in an envelope, addressed to the person(s) listed

above, sealed, and deposited with the United States Postal Service with postage fully prepaid in accordance with the ordinary course of business.

■ **(FEDERAL)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

□ **(STATE)** I declare that I am employed in the office of a member of the Bar of this Court at whose direction the service was made.

I certify that all parties in this case that have made an appearance are represented by counsel who are CM/ECF participants who have consented to electronic service.

I declare under penalty of perjury under the laws of the State of California and the United States of America that the above is true and correct.

Dated: July 11, 2008 FOLEY BEZEK BEHLE & CURTIS, LLP

*s/Roger N. Behle, Jr.*
Roger N. Behle, Jr.
Attorneys for Defendants.